IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
2:06cv11

| | |
|---|---|
| STELLAR INSURANCE GROUP, INC.; and TOM STALLINGS, <br><br> Plaintiffs, <br><br> Vs. <br><br> CENTRAL COMPANIES, LLC d/b/a and/or a/k/a CENTRAL LEASING MANAGEMENT, INC.; and PEO MANAGEMENT GROUP, INC. d/b/a and/or a/k/a SCI COMPANIES, <br><br> Defendants. | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER** is before the court upon defendants' Motion to Dismiss. Having carefully considered defendants' Motion to Dismiss and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

### I. Background

#### A. Nature of Plaintiffs Work

In this action, plaintiffs contend that in 2002 they (a corporation and an individual) were employed by defendant Central Companies, LLC ("Central") as sales agents. Complaint, at ¶ 8. Plaintiffs allege that their duties included locating businesses "that were in need to having leased employees, their services and workers compensation benefits." Id. (errors in original). Apparently, plaintiffs allege that they were hired to locate businesses that would transfer their employees to Central, which would in turn provide these employees with workers compensation coverage, and then lease these employees back to the businesses from

1

which they were acquired.

Plaintiffs contend that Central agreed to compensate them through payment of a commission of one and one-half percent of the total payroll of the acquired business. Id., at ¶ 10. Plaintiffs further allege that such commissions were to continue "so long as CENTRAL continued to conduct business with the entity acquired . . . ." Id.

### B. Plaintiffs' Allegations of Breach of Contract

In Count One of the Complaint, plaintiffs attempt to allege that Central and SCI Companies ("SCI") breached the agreement concerning the payment of commissions.

First, plaintiffs allege that such agreement was breached as to two accounts for businesses they acquired for Central. First, plaintiffs contend that a breach occurred at some unspecified date after January 1, 2004, when Central unilaterally stopped paying commissions on the "Service Express, Inc. Account" ("Service Express account") Id., at ¶ 14.

Second, plaintiffs contend that another breach occurred when Central paid them a one percent commission on workers compensation premiums, rather than one and one-half percent on payroll as allegedly agreed, for another account plaintiffs' acquired, the "TMG Staffing Services, Inc. Account" ("TMG account"). Id., at 18-22. Plaintiffs further allege that an additional breach occurred as to the TMG account when SCI acquired that account[1] on August 1, 2005, id., at 17 & 23, and thereafter ceased payment of any commission to plaintiffs.

---

[1] Plaintiffs have not alleged that SCI acquired the Service Express account from Central.

2

### C. Plaintiffs' Allegations of Violation of North Carolina's Wage and Hour Act

In Count Two of the Complaint, plaintiffs contend that the "defendants" failure to pay commissions as well as termination of their services without compensation for past and future commissions violates the North Carolina Wage and Hour Act.

### D. Defendants' Motion to Dismiss

Defendants have moved to dismiss, contending under Rule 12(b)(1), Federal Rules of Civil Procedure, that this court lacks subject-matter jurisdiction over "SCI Companies," Rule 12(b)(2) that this court lacks personal jurisdiction over most of the defendants, and Rule 12(b)(6) for failure to state a cause of action against any of these defendants. Plaintiffs have filed a three-page response, which only addresses defendants' Rule 12(b)(2) motion. Defendants have filed a timely reply, and plaintiffs have filed a Motion for Leave of Court to File Verification of Complaint (#13).[2]

## II. Applicable Standards

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron

---

[2] Plaintiffs' motion was not ripe at the time of entry of this recommendation.

v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiffs. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id., at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

**B. Rule 12(b)(2)**

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based

**4**

on Rule 12(b)(2) was set forth in Combs v. Bakker, 886 F.2d 673, 676 (4th Cir.1989), where it explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence. When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Id. When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and the burden is plaintiff's "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Bakker, at 676. Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and drawing the most favorable inferences for the existence of jurisdiction. Id.

### C. Rule 12(b)(6) Standard

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where

it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendants' motions, the court has accepted as true the facts alleged by plaintiffs in the complaint and will view them in a light most favorable to plaintiffs.

### III. Defendants' Motions to Dismiss

#### A. Rule 12(b)(1): Lack of Subject Matter Jurisdiction as to Plaintiffs' Claims Against SCI Companies

Defendant "SCI Companies" has moved to dismiss the Complaint as to such entity, arguing that "SCI Companies" is not a legal entity, but is instead a "general name under

**6**

which several companies operate." Response, at 16. Defendants have provided the court with no case citations in support of its argument, and plaintiffs have failed to present any argument.

In Sweeney v. Greenwood Index-Journal Co., 37 F.Supp. 484 (D.S.C. 1941), *disapproved on other grounds,* United States v. A. H. Fischer Lumber Co., 162 F.2d 872 (4th Cir. 1947), plaintiff attempted to sue a non-existent corporation by naming such non-entity in its Complaint and Summons. The misnamed defendant moved to dismiss under Rule 12(b)(2), (4), and (5), and the district court dismissed finding that misnomer of the corporation was a fatal defect. Sweeney, supra, at 487. In A. H. Fischer Lumber Co., the Court of Appeals for the Fourth Circuit likewise held that a corporation has the "right to be accurately named in process and pleadings of the court; and misnomer was properly raised by motion to dismiss . . . ." Id., at 873.

In paragraph four of the Complaint, plaintiffs name as a defendant "PEO MANAGEMENT GROUP, INC. d/b/a and/or a/k/a SCI COMPANIES . . . ." Complaint, at ¶ 4. In Count One of the Complaint, however, plaintiffs simply reference as the defendant "SCI COMPANIES." Id., at ¶¶ 17, 18, 21, 23, 24, & 26. In Count Two, plaintiffs simply refer to the "acts of the defendants." Complaint, at ¶ 29.

Had plaintiffs moved to amend the Complaint to substitute PEO Management Group, Inc., ("PMGI") as the proper defendant in Count One, this court would have allowed such amendment. Instead, defendants' affidavit filed in support of their Rule 12(b)(1) motion, which shows that SCI Companies is not a legal entity, is unrebutted and the undersigned is left with no choice but to recommend to the district court that defendants' Rule 12(b)(1) motion be granted.

B.     **Rule 12(b)(2): Lack of Personal Jurisdiction as to Certain Defendants**

Defendants Central, PMGI., and SCI Companies ("the moving defendants") have moved to dismiss the claims against them contending that this court lacks personal jurisdiction. Absent from such motion is defendant Central Leasing Management, Inc. ("CLM"). The moving defendants contend that the action should be dismissed as to them because plaintiffs have not alleged that such defendants have the requisite minimum contacts with the State of North Carolina that would justify the exercise of personal jurisdiction over them.

At the constitutional level, whether or not to exercise jurisdiction over a defendant is a question of fairness. International Shoe Co. v. Washington, 326 U.S. 310, 317-20 (1945). However, determining what is fair requires review of the quantity and quality of the defendant's contacts with the forum state. Perkins v. Benquet Mining Co., 342 U.S. 4376 (1952). There are five factors used in determining whether the long-arm statute and minimum contacts have been satisfied:

    (1)    quantity of the contacts;
    (2)    nature and quality of the contacts;
    (3)    source and connection of the cause of action to the contacts;
    (4)    interest of the forum state; and
    (5)    convenience.

Western Steer-Mom & Pops v. FMT Invs., Inc., supra, at 264; see Fieldcrest Mills, Inc. v. Mohasco Corp., supra, at 427; *see also* N.C. Gen. Stat. § 1-75.4(5) (North Carolina long-arm statute). The burden is on plaintiffs to establish that the long-arm statute provides for jurisdiction over these moving defendants. Marion v. Long, 72 N.C. App. 585, cert. denied, 313 N.C. 604 (1985).

When a motion to dismiss based on personal jurisdiction is filed, a court has two options: (1) consider "the motion papers, supporting legal memoranda, affidavits, other

documents, and the relevant allegations of the complaint," Clark v. Milam, supra; or (2) defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. Combs v. Bakker, supra.

Plaintiffs have submitted their responsive brief with attached exhibits. Included are two affidavits of Plaintiff Stallings, with one dated July27, 2006, and another dated July 28, 2006. The only difference appears to be the addition of " paragraph 12" to the later affidavit. In those affidavits, plaintiffs aver that Central employed approximately 100 North Carolina residents as part of the account with Service Express, a South Carolina corporation, Stallings' Aff., at ¶ 7, and employed approximately 300 North Carolina residents as part of an account with Owner/Operator Resources Corporation, an Indiana corporation. Id., at ¶ 8. Plaintiff Stallings further alleges that Central and PMGI had another agent in North Carolina. Id., at ¶ 12. Also as to PMGI, Plaintiff Stallings alleges that he received a commission from PMGI for an account he established with Stat, Inc., which he avers is "domiciled in Hudson, North Carolina." Id., at 10. Plaintiff Stallings has also tendered what appears to be a commission check made payable to Plaintiff Stellar and addressed to such plaintiff in Scaly Mountain, North Carolina.

In reply, the moving defendants counter that the non-moving defendant CLM sold its client service contracts to Venture Resources Group, Inc. ("VRG"), in August 2005, including the contract with Stat, Inc., that VRG is one the "SCI Companies," and it was VRG that paid Plaintiff Stellar based on a W-9 submitted by Plaintiff Stallings. Reply, at 7. The moving defendants further argue that VRG paid Plaintiff Stellar through a bank account owned by PMGI, id., and that it continues to pay Plaintiff Stellar commissions "through PMGI". Defendants go on to argue, as follows:

> [T]he actions of VRG cannot be imputed to Central Companies, LLC, PMGI or SCI Companies. PMGI administers the collection and disbursement of

**9**

funds on behalf of VRG. However, the fact that corporations have common officers, occupy common offices, and to a certain extent transact business for each other do not make the one corporation liable for the actions of the other. Furthermore, there is no evidence that PMGI dominates or controls VRG, and the cold record establishes that PMGI, as an administrative supporter or manager of the distribution funds of VRG, simply issued commission checks to Stellar Insurance Group, Inc. as an independent contractor on behalf of VRG. Thus, even though the commission check was issued from a PMGI account, there is no jurisdiction over PMGI because the payment was made by and on behalf of VRG.

Reply, at 7-8 (citations omitted; emphasis deleted). After attempting to diagram that explanation, the court is reminded of the words of Yogi Berra: "You've got to be very careful if you don't know where you are going, because you might not get there."

Defendants' reply has given this court some pause. Defendants arguments concerning "piercing the corporate veil" have raised a concern that there is a unity of interest among these defendants, which would at a minimum require discovery to determine whether the activities and contacts of one corporate entity should be attributed to another. Defendants argue that they are distinct entities; however, if the contacts of the various defendants are determined to be the acts of a single enterprise (i.e., where a different corporate name is used to do the various activities of one enterprise), then it is possible that minimum contacts are satisfied. In addition, deferring decision appears to be the appropriate course inasmuch as it appears that all of the defendants herein are represented by the same attorney, and "joint representation suggests that one corporation serves as the alter ego of another. F.D.I.C. v. Allen, 584 F.Supp. 386, 397 (E.D.Tenn.1984)." Concept One Intern., Inc. v. Nippecraft Ltd., 1997 WL 483248, *9 (W.D.Mich. 1997).[3]

Typically, this court prefers to resolve the issue of personal jurisdiction early on in litigation, because if personal jurisdiction is lacking, then substantial costs to the parties as

---

[3] Due to the limits of electronic filing, a copy of such unpublished decision is incorporated herein by reference to the Westlaw citation.

well as the public can be avoided. On the one hand, plaintiffs have averred that Central employed approximately 100 North Carolina residents and that PMGI employed several hundred. On the other hand, defendants have argued that plaintiffs have shown no basis for such averment and that PMGI should not be hailed into this court because it acted *on behalf* of a non-party. The Supreme Court has been clear that physical presence of corporation in a forum state is not required:

> Thus where the defendant "deliberately" has engaged in significant activities within a State, or **has created "continuing obligations" between himself and residents of the forum**, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985)(citations omitted; emphasis added). At this point the court cannot determine what, if any, contacts each moving defendant has had with North Carolina or whether the acts of other corporations should also be considered. Discovery may assist the court in making such determination.

When this court received defendants' Rule 12(b)(2) motion, the court anticipated that plaintiffs would request discovery on the issue of personal jurisdiction, for depositions to be taken, and for interrogatories to issue. Unless the plaintiffs are corporate insiders, the court knows of no other method for determining what contacts a particular defendant has with the proposed forum. While plaintiffs bear the burden,[4] the information presented to the court is simply insufficient to conduct a meaningful review in accordance with Western Steer-Mom & Pops v. FMT Invs., Inc., supra. The undersigned will, therefore, recommend that the district court defer decision on defendants' Rule 12(b)(2) motion until the time of trial, if any.

---

[4] Plaintiffs are advised that their response did little to aid this court.

### C. Rule 12(b)(6): Failure to State a Cause of Action

All defendants have moved to dismiss the Complaint for failure to state a cause of action. Plaintiffs have not opposed this motion. While the court would typically grant such a motion summarily, the undersigned cannot make such a recommendation inasmuch as defendants' arguments are not supported by citations to law and are, at times, contrary to law.

#### 1. Breach of Contract: Failure to States a Claim

To assert a breach of contract, plaintiffs must allege the (1) existence of a valid contract and (2) breach of the terms of that contract. <u>Poor v. Hill</u>, 138 N.C.App. 19, 26 (2000). The North Carolina Court of Appeals has held that

> To allege a claim for a breach of contract, a plaintiff must allege facts showing the existence of a valid contract, and facts showing there has been a breach of the terms of the contract. When a complaint alleges each of these elements, we have held that it is error to dismiss a breach of contract claim under Rule 12(b)(6).

<u>Bowen v. Parker</u>, 2006 WL 1321159, *2 (N.C.App.2006).

Defendants have moved to dismiss plaintiffs' breach of contract claim, arguing that plaintiffs have failed to state a cause of action, as follows:

> Plaintiffs' Complaint contains no allegation that a contract was entered into, that adequate consideration supported any contract, or that any contract was reduced to writing, and no contract is attached to Plaintiffs' Complaint.

Brief in Support, at 10. After making these introductory arguments, defendants appear to concede that plaintiffs have alleged the existence of an employment contract, but then argue that a cause of action will not lie for events that postdate termination of an employment contract.

In sum, defendants arguments for dismissal appear to be that (1) "Plaintiffs loosely allege the formation of a contract for employment," (2) such contract was terminable at will, and (3) Central terminated such contract on January 1, 2004, and "[a]ny action occurring

on or after January 1, 2004 . . . cannot form the basis of a claim for breach of contract." Id., at 11. Defendants cite no cases that support such arguments. The undersigned will discuss each theory below:

(1) That a plaintiff "loosely allege[s]" the formation of a contract is not a basis for dismissal under Rule 12(b)(6). Rule 8(a) simply requires "notice pleading," and plaintifss have alleged both a contract and its breach.

(2) That such contract was, according to defendants, "terminable at will" does not defeat the ability of plaintiffs to allege a contract and its breach. The North Carolina courts have specifically held that even where an employee was "at will," a "[p]laintiff's claim for unpaid wages is contractual, rather than tortious, in nature." Paquette v. County of Durham, 155 N.C.App. 415, 420 (2002). While a cause of action for wrongful discharge from at-will employment is only actionable when such termination violates public policy, Coman v. Thomas Mfg. Co., Inc., 325 N.C. 172 (1989), plaintiffs at no point in their Complaint contend that they were wrongfully terminated, only that defendants failed to pay them in accordance with their agreement - - a breach of contract claim.

(3) That no cause of action can be based on actions occurring after termination is logically and legally flawed. Under defendants theory, for example, a homeowner employs a real estate agent to sell his home, and promises to pay the agent a commission. The agent promptly obtains a ready, willing, and able buyer and secures a contract for sale. The seller promptly fires the agent and at closing refuses to pay the agent his commission. Under defendants' theory, the agent would simply be out-of-luck because the "action" occurred after the agent was terminated.

Reading plaintiffs' Complaint in a light most favorable to them, it appears that they are not contesting being terminated from Central's employ, but are instead contending that

13

the agency contract was breached when Central and its successor(s) in interest failed to pay commissions that were due "so long as CENTRAL continued to conduct business with the entity acquired . . . ." Complaint, at ¶ 10 (emphasis in original).

The undersigned does, however, agree that Count One of plaintiffs' Complaint is not a model of clarity and is, to put it mildly, confusing; however, in North Carolina, there are no magic words for pleading and all that plaintiff need to allege are the (1) existence of a valid contract and (2) breach of the terms of that contract. Poor v. Hill, supra. Federal practice simply requires notice pleading, and plaintiffs need not *allege* adequate consideration. Even termination of an at-will contract of employment does not allow an employer to forego payment of accrued wages, benefits, or prospective payment of vested commissions. Paquette v. County of Durham. As noted by commentators,

> [o]rdinarily an employee does not forfeit his right to commissions, already earned under his contract, by the termination of his employment, as by his discharge, unless the contract of employment provides otherwise or provides for the performance of services as an entirety, or unless there is a recognized custom in the business that such right will terminate with the employment. An employee who is discharged for the purpose of avoiding the payment of commissions is entitled to receive such commissions even though under the terms of his contract he is required to be employed at the time that the commissions are payable. However, there is also authority that an at-will employee is not entitled to commissions after the termination of employment.

CJS EMPLOYER § 142 (footnotes omitted). The undersigned will, therefore, respectfully recommend that defendants' Motion to Dismiss Count One of plaintiffs' Complaint be denied.[5]

---

[5] The undersigned has hesitated to so recommend inasmuch as plaintiffs failed to respond to this motion; however, the undersigned cannot see penalizing plaintiffs for the missteps of counsel. The undersigned believes that the court has an independent duty to carefully consider any motion. Counsel for the plaintiffs is admonished that his lack of diligence has not only jeopardized his client's claims, but multiplied the expenditure of limited court resources.

### 2. Breach of Contract Claim: Statute of Frauds

Defendants have also moved for dismissal under Rule 12(b) arguing that the breach of contract claim must be dismissed based on the South Carolina "statute of frauds." The statute of frauds is an "affirmative defense" which must be asserted under Rule 8(c), Federal Rules of Civil Procedure, in order to be preserved.

> It is well established that affirmative defenses, such as the failure of a contract sued upon to satisfy the statute of frauds, may be raised in a motion to dismiss an action for failure to state a claim. However, it is equally well settled that, for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear "on the face of the plaintiff's pleadings."

Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, *197 (1st Cir. 2001). In this case, there is little that is clear from the face of plaintiffs' pleadings, much less whether the contract was entered into in South Carolina, or whether it was written or oral. While plaintiffs may not have a document captioned "Agency Contract," it is conceivable that they have letters or email correspondence indicating the terms of the alleged agreement. The undersigned will, therefore, recommend that this motion be denied without prejudice as to reconsideration after discovery has been conducted.

### 3. Wage and Hour Claim

#### a. A corporation cannot be an "employee."

Plaintiffs have likewise failed to respond to defendants' Motion to Dismiss their wage and hour claim. Defendants first argue that a corporate plaintiff, such as Plaintiff Stellar, cannot allege a cause of action under North Carolina's Wage and Hour Act inasmuch as a "corporation" cannot be an "employee" or wage earner. The undersigned fully agrees, as the statute provides that an employee is "any individual employed by an employer." N.C.Gen.Stat. § 95-25.2(4). See Laborers Union of North America v. Case Farms, Inc., 127 N.C.App. 312, 315 (1997). Other courts have found as much under similar wage and hour

laws:

> the WPCL provides that "any employee or group of employees, labor organization or party to whom any type of wages is payable may institute actions provided under [the WPCL]." Corporations such as LTS are not "employees" for WPCL purposes and are not entitled to the WPCL's protections.

Little v. USSC Group, Inc., 404 F.Supp.2d 849, 853 (E.D.Pa. 2005)(citations omitted). The undersigned will, therefore, respectfully recommend that defendants' Motion to Dismiss be granted as to Plaintiff Stellar's claim under the Wage and Hour Act.

### b. Two-year statute of limitation.

Defendants have also moved to dismiss this claim as to all defendants based on the two year statute of limitation for bringing wage and hour claims under North Carolina law. See N.C.Gen.Stat. § 1-53 & § 95-25.22(f). Defendants premise this request on the argument that "[a]ny action for any violation of North Carolina Wage an Hour Act accrued subsequent to 13 April 2002 and prior to 1 January 2004," and that "[p]laintiffs' action was instituted on or about May 8, 2006." Defendants' argument that "any action . . . accrued . . . prior to 1 January 2004" does not encompass all conceivable claims inasmuch as Plaintiff Stallings alleges (albeit inartfully) that defendants failed to pay him commissions after such date.

With deferred compensation or commissions, an employee's right to receive such compensation may accrue in the year earned, but the cause of action may not accrue until the employer fails to tender the compensation or prospectively informs the wage earner that no more payments will be forthcoming, which may be years after termination. While the undersigned agrees that any *cause of action* that accrued on or before May 7, 2004, is barred, Plaintiff Stallings still has the ability to assert causes of action that accrued after May 8, 2004, for compensation which he was due to be paid on or after that date, but which defendants refused to pay on or after those dates. While only persuasive, one court has

16

found, as follows:

> Each time AMW failed to pay Andersen [his Commission], a separate breach of the agreement occurred. Therefore, a separate cause of action accrued at the time of each breach. AMW's obligation under the agreement is similar to an obligation payable by installments. Where an obligation is payable by installments, the statute of limitations runs against each installment individually from the time it becomes due.

Andersen v. A.M.W., Inc., 266 Neb. 238, 244 (2003). The decision of the Nebraska Supreme Court appears to be in accord with decisions of the North carolina Court of Appeals, which has held, as follows:

> Generally our statutes of limitation do not begin to run until the claim accrues, and the claim does not accrue until the injured party is at liberty to sue or is entitled to institute an action. A cause of action for the breach of a contract accrues at the time of the breach which gives rise to the right to a cause of action.
> * * *
> Generally, where obligations are payable in installments, the statute of limitations runs against each installment independently as it becomes due.

Martin v. Ray Lackey Enterprises, Inc., 100 N.C.App. 349, *356-357 (1990)(citations omitted).

Accordingly, defendants are correct that all claims accruing on or before May 7, 2004, should be dismiss, and the undersigned will so recommend; however, the undersigned will recommend that claims accruing on or after May 8, 2004, not be dismissed.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1) defendants' Motion to Dismiss all claims asserted against "SCI Companies" be **GRANTED** under Rule 12(b)(1) based on misnomer;

(2) defendants' Motion to Dismiss Defendants Central, PMGI., and SCI Companies in accordance with Rule 12(b)(2) be **DEFERRED** for decision at trial; and

17

(3) defendants' Motion to Dismiss based on Rule 12(b)(6) be **GRANTED** in part and **DENIED** in part, as follows:

(a) as to plaintiffs' cause of action for breach of contract,

  (i) **DENIED** under Rule 12(b)(6) inasmuch as a cognizable claim has been stated;

  (ii) **DENIED** without prejudice on the affirmative defense of the bar of statute of limitation, with leave granted to either reassert such motion or renew such motion for reconsideration after discovery has been concluded; and

(b) as to plaintiffs' cause of action for violation of North Carolina's Wage and Hour Act,

  (i) **GRANTED** as to any claim asserted by Plaintiff Stellar; and

  (ii) **GRANTED** as to any claim asserted by Plaintiff Stallings accruing on or before May 7, 2004, and **DENIED** as to any claim asserted by Plaintiff Stallings accruing on or after May 8, 2004.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: September 12, 2006

Dennis L. Howell
United States Magistrate Judge