**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION**

**CIVIL NO. 2:06CV11**

| | |
|---|---|
| **STELLAR INSURANCE GROUP, INC.,** ) <br> **and TOM STALLINGS,** ) <br> ) <br> **Plaintiffs,** ) <br> ) <br> **Vs.** ) <br> _____ ) <br> **CENTRAL COMPANIES, LLC, d/b/a,** ) <br> **and/or, a/k/a CENTRAL LEASING** ) <br> **MANAGEMENT, INC.; and PEO** ) <br> **MANAGEMENT GROUP, INC., d/b/a,** ) <br> **and/or, a/k/a SCI COMPANIES, INC.,** ) <br> ) <br> **Defendants.** ) <br> _____ ) | <u>**MEMORANDUM**</u> <br> <u>**AND ORDER**</u> |

**THIS MATTER** is before the Court on Plaintiffs' timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Dennis Howell and Defendants' responses to those objections. Pursuant to standing orders of designation and 28 U.S.C. § 636, the undersigned referred Defendants' motion for summary judgment to the Magistrate Judge for a recommendation as to disposition. Having conducted a *de novo* review of those portions of the recommendation to which specific objections were filed, the Court adopts in part the

Memorandum and Recommendation for the reasons set forth below. **28 U.S.C. § 636(b); Fed. R. Civ. P. 72.**

## I. STANDARDS OF REVIEW

### A. Motion to Amend

Ordinarily, a party wishing to amend its complaint benefits from the relatively lenient provisions of Fed. R. Civ. P. 15, which states, in pertinent part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires*.

**Fed. R. Civ. P. 15(a) (emphasis added).** Nonetheless, after a scheduling order has been issued pursuant to Fed. R. Civ. P. 16, the rules regarding amendment of the attendant pleadings are not as liberal. "When the district court has filed a . . . pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order." ***Thomas v. Corwin*, 483**

**F.3d 516, 532 (8ᵗʰ Cir. 2007) (internal quotation marks omitted); *see***

***also Adams v. Calif. Dep't of Health Servs.*, 220 F. App'x 590, 592 (9ᵗʰ**

**Cir. 2007); *Muegge v. Heritage Oaks Golf & Country Club, Inc.*, 209 F.**

**App'x 936, 939-40 (11ᵗʰ Cir. 2006); *Walton v. Nalco Chem. Co.*, 272 F.3d**

**13, 20 (1ˢᵗ Cir. 2001); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326,**

**339 (2d Cir. 2000); *Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*,**

**218 F.R.D. 455, 459 (M.D.N.C. 2003) (discussing the tension between**

**Rule 15 and Rule 16).**

Accordingly, since a pretrial scheduling order has already been

entered in this case, Plaintiffs' motion for leave to amend their complaint

will be allowed solely upon a showing of good cause. ***See* Pretrial Order**

**and Case Management Plan, filed November 29, 2006.**


**B. Summary Judgment**

Summary judgment is appropriate when there is no genuine issue of

material fact, and judgment for the moving party is warranted as a matter

of law. **Fed. R. Civ. P. 56(c).** "A genuine issue [of fact] exists 'if the

evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" ***Shaw v. Stroud*, 13 F.3d 791, 798 (4ᵗʰ Cir. 1994)**

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In considering a motion for summary judgment, the Court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party.  *Id.*

By reviewing substantive law, the Court may determine what matters constitute material facts.  *Anderson*, at 248.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.*  "The party seeking summary judgment has the initial burden to show a lack of evidence to support the nonmoving party's case."  *Shaw*, *supra*, at 798.  If that showing is made, the burden then shifts to the nonmoving party who must convince the Court that a triable issue does exist.  *Id.*  A "mere scintilla of evidence" is not sufficient to defeat a motion for summary judgment.  *Id.*

Accordingly, in considering the facts of this case for purposes of Defendants' summary judgment motion, the Court will view the record in the light most favorable to Plaintiffs, the nonmoving party.

## II. FACTUAL AND PROCEDURAL HISTORY

Defendant Central Companies, LLC, d/b/a and/or a/k/a Central Leasing Management, Inc. (Central), is an employee leasing company. As such, its client companies transfer their employees to Central. Central provides these employees with insurance coverage, in exchange for a premium, and then "leases" the employees back to the client. **Complaint, filed May 8, 2006, at 2, 3; Second Memorandum and Recommendation, filed September 13, 2007, at 2;** *see also Farkas v. United States*, **57 Fed. Cl. 134, 136 n.1 (2003) ("Employee leasing companies lease employees to smaller companies, the benefit being that smaller companies pay a standard contract price to the employee leasing company, which in turn takes care of such things as the insurance plans and payroll taxes for its employees."),** *aff'd*, **95 F. App'x 355 (Fed. Cir. 2004).**

In April 2002, Central hired Plaintiff Tom Stallings (Stallings) on commission as a sales agent. **Complaint,** *supra*, **at 2.** Stallings was an employee and shareholder of Plaintiff Stellar Insurance Group, Inc. (Stellar), and it was his job as a sales agent to locate new clients for Central. *Id.* Stallings alleges that, in return, Central agreed to pay him a

commission equal to "1.5% of the payroll that was paid to the collective group of leased employees for any company that [Stallings] acquired for [Central]. . . . The commission was to be paid to [Stallings] so long as [Central] continued to conduct business with the entity acquired for the company by [Stallings]." *Id.*

Stallings further alleges that pursuant to this agreement, he lined up Service Express, Inc., (Service Express) and TMG Staffing Services, Inc., (TMG Staffing) as clients for Central. *Id.* **at 2, 3.** With respect to the Service Express account, Central paid Plaintiffs an amount equivalent to 1.5 percent of payroll until January 1, 2004, at which point it stopped making any payments to Plaintiffs pursuant to this account. *Id.* **at 2; Deposition of Tom Stallings,** *attached to* **Plaintiffs' Memorandum in Objection to Defendants' Motion for Summary Judgment, filed May 24, 2007, at 57.**

As to the TMG Staffing account, Central paid Plaintiffs an amount equivalent to one percent of the workers' compensation premiums it received from the account. **Complaint,** *supra***, at 3.** Central stopped making these payments as of August 1, 2005, when it sold its employee leasing business to Defendant SCI Companies (SCI). *Id.*

SCI did not pay Plaintiffs any commissions based on either the TMG Staffing account or the Service Express account at any point. *Id.* According to the complaint, Defendant PEO Management Group, Inc., (PMGI) is "d/b/a and/or a/k/a" SCI. *Id.* **at 1.**

Plaintiffs' Complaint alleges (1) breach of contract by Central and SCI, and (2) violation of the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 to 95-25.25 (NCWHA) by all Defendants. *Id.* **at 2-4.** Defendants filed a motion to dismiss, claiming lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and (b)(2) and failure to state a claim under Fed. R. Civ. P. 12(b)(6). **Defendants' Motion to Dismiss, filed July 21, 2006, at 2, 9.**

With respect to these motions, this Court adopted the Magistrate Judge's first Memorandum and Recommendation, which (1) dismissed all claims against SCI pursuant to Fed. R. Civ. P. 12(b)(1); (2) dismissed Plaintiff Stellar's claims under the NCWHA; and (3) dismissed Plaintiff Stallings' claims under the NCWHA accruing on or before May 7, 2004. In addition, the following motions were dismissed without prejudice to renew at the close of discovery: (1) Defendants' motion to dismiss the entire lawsuit based on Fed. R. Civ. P. 12(b)(2); and (2) Defendants' motion to

dismiss Plaintiffs' breach of contract claim based on the statute of frauds. **Memorandum and Order, filed October 3, 2006, at 2-3; First Memorandum and Recommendation, filed September 12, 2006, at 17-18.** Following entry of the October 3, 2006, Order, the remaining claims were (1) Plaintiffs' breach of contract claim against Central, and (2) Plaintiff Stallings' claims under the NCWHA accruing on or after May 8, 2004, against Central and PMGI. On November 29, 2006, this Court entered a pretrial scheduling order regarding these remaining claims.

Defendants filed for summary judgment, and Plaintiffs filed a response, to which Defendants replied. **Defendants' Motion for Summary Judgment, filed April 30, 2007; Plaintiffs' Memorandum in Objection to Defendants' Motion for Summary Judgment, *supra*; Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment, filed June 5, 2007.**

While Defendants' summary judgment motion was pending in this Court, Plaintiffs moved to amend their complaint to add a breach of contract claim against PMGI, filing simultaneously a "New and Supplemental Memorandum of Law" opposing summary judgment. **Plaintiffs' Motion for Leave to File First Amended Complaint, filed July**

**27, 2007, at 6-7; Plaintiffs' New and Supplemental Memorandum of**

**Law in Opposition to Defendants' Motion for Summary Judgment,**

**filed July 27, 2007.** Defendants again responded, prompting another reply

from Plaintiffs. **Defendants' Supplemental Reply in Support of Motion**

**for Summary Judgment, filed August 6, 2007; Plaintiffs' Reply**

**Memorandum to Defendants' Memorandum in Opposition to**

**Plaintiffs' Motion to Amend, filed August 15, 2007.**

The Magistrate Judge filed a second Memorandum and

Recommendation that denied Plaintiffs' motion to amend and granted

summary judgment on all issues in favor of Defendants. **Second**

**Memorandum and Recommendation, filed September 13, 2007, at 21-**

**22.**

## III.  DISCUSSION

"'Parties filing objections must specifically identify those findings

objected to.'" ***Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th**

**Cir.1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th**

**Cir.1982), *overruled on other grounds by Douglass v. United Servs.***

***Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)).** Where specific objections are

not filed, a district court should give such review to the memorandum and

recommendation as it deems appropriate.  **Thomas v. Arn**, **474 U.S. 140,**

**152 (1985).**  In this case, the Court has conducted a careful review of all

portions of the Memorandum and Recommendation that were not the

subject of a specific objection and concludes that they are correct.

Accordingly, these portions are adopted and hereby incorporated in full.

As to those portions of the Memorandum and Recommendation to

which specific objections were filed, this Court will conduct a *de novo*

review.  **28 U.S.C. § 636(b); Fed. R. Civ. P. 72.**

**A. Motion to Amend**

Plaintiffs' original complaint does not specifically mention PMGI

except to state that PMGI is doing business as and/or also known as SCI.

The Magistrate Judge's first recommendation, fully adopted by the Court

on October 3, 2006, notes:

> In paragraph four of the Complaint, plaintiffs name as a
> defendant "PEO MANAGEMENT GROUP, INC. d/b/a and/or
> a/k/a SCI COMPANIES."  In Count One of the Complaint,
> however, plaintiffs simply reference as the defendant "SCI
> COMPANIES."  In Count Two, plaintiffs simply refer to the "acts
> of the defendants."

> Had plaintiffs moved to amend the Complaint to substitute PEO Management Group, Inc. ("PMGI") as the proper defendant in Count One, this court would have allowed such amendment. Instead, defendants' affidavit filed in support of their Rule 12(b)(1) motion, which shows that SCI Companies is not a legal entity, is unrebutted and the undersigned is left with no choice but to recommend to the district court that defendants' Rule 12(b)(1) motion be granted.

**Memorandum and Recommendation, filed September 12, 2007, *supra*, at 7 (citations omitted) (recommending that the Court grant in part and deny in part Defendants' motion to dismiss).**

Plaintiffs waited almost a year after that Memorandum and Recommendation before moving to amend their Complaint as the Court indicated. **Plaintiffs' Motion for Leave to File First Amended Complaint, filed July 27, 2007.** The lawsuit, meanwhile, had been scheduled for trial and had proceeded through most of the summary judgment phase. Plaintiffs' late motion to amend precipitated a second full round of summary judgment filings. *See* **Plaintiffs' New and Supplemental Memorandum, *supra*; Defendants' Supplemental Reply, *supra*.**

As discussed above, motions to amend an original complaint that have been filed after the pretrial scheduling order must be accompanied by a showing of good cause as to their lateness. *E.g., **Thomas**, 483 F.3d at

**532.** Plaintiffs state that they had no way of knowing "about the transfer and division of assets of defendant Central Companies" before their May 16, 2007, discovery of a copy of the Asset Purchase Agreement wherein Central sold off its employee leasing business (APA). **Plaintiffs' Objection to Second Memorandum and Recommendation, filed September 27, 2007, at 2.**

The record, however, indicates that Plaintiff Stallings knew about PMGI's role in the asset purchase before this lawsuit was ever filed. Specifically, he testified in a March 2, 2007, deposition that he believed PMGI had assumed at least some obligations to pay commissions inherited from Central, because after the asset purchase PMGI had continued to pay Stallings commission on an account unconnected to this lawsuit, for a company called Stat, Inc. **Stallings Deposition,** *supra***, at 68.** Stallings also testified that the commission checks he received for the Stat, Inc., account, carried PMGI's name. *Id.* **at 65.** Plaintiffs' proposed Amended Complaint itself alleges, "for some time [PMGI] did pay commissions to the plaintiffs on at least one of the accounts of [Central] for which the plaintiffs were entitled to a commission." **Plaintiffs' Proposed First Amended Complaint,** *attached to* **Motion to Amend, ¶ 3.** Given

that Stallings had knowledge of PMGI's role all along, Plaintiffs are unable to make the necessary showing of good cause for their lengthy delay in moving to amend their complaint to add a breach of contract claim against PMGI.

Moreover, even if they had succeeded in showing good cause, Plaintiffs' new claim against PMGI would still be subject to a grant of summary judgment in favor of Defendants.  Nearly all jurisdictions acknowledge that the first essential element of a breach of contract claim is the existence of a valid contract.  ***See, e.g.***, ***Myrick v. Prime Ins. Syndicate, Inc.***, **395 F.3d 485, 490 (4th Cir. 2005).**  In this case, Plaintiffs have at no time forecast any evidence of this first element, namely that PMGI assumed an obligation to pay commissions to Plaintiffs on the TMG Staffing and/or Service Express accounts.

Plaintiffs nonetheless emphasize Exhibit P to the APA, which states that Central, "to its knowledge, has oral arrangements with the following individuals and/or corporations regarding agency/marketing of PEO Services."  Plaintiff Stellar is one of the entities on the list that follows.  **Exhibit G,** ***attached to*** **Plaintiff's New and Supplemental Memorandum,** ***supra***.  Contrary to Plaintiffs' assertions, Exhibit P is, to all

appearances, a simple disclosure statement.  It contains no indication that PMGI assumed Central's obligations to the entities on the list.  Plaintiffs, moreover, have pointed to no other portion of the APA that so obligates PMGI.  Absent such a forecast of evidence, even if this Court did choose to exercise its discretion to allow Plaintiffs to amend their Complaint, Plaintiffs could not survive summary judgment on their breach of contract claim against PMGI.

The undersigned notes that such a result is consistent with the general assumption, discussed and argued at length by the parties, that in North Carolina "the purchaser of all or substantially all the assets of a corporation is not liable for the old corporation's debts."  ***G.P. Publ'ns, Inc. v. Quebecor Printing-St. Paul, Inc.*, 125 N.C. App. 424, 432, 481 S.E.2d 674, 679 (1997).**  While it is true that there are exceptions to this general rule against successor liability, Plaintiffs have failed to produce a meaningful forecast of evidence as to why the Court should apply any of these exceptions in the instant case.  ***Id.* at 432-33, 481 S.E.2d at 679 (listing four exceptions as: "(1) where there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) where the transfer amounts to a *de facto* merger of the**

**two corporations; (3) where the transfer of assets was done for the purpose of defrauding the corporation's creditors; or (4) where the purchasing corporation is a 'mere continuation' of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers").**

## B. Breach of Contract Claim Against Central[1]

Central, the only remaining Defendant, and Plaintiffs appear to be in agreement that North Carolina law governs their contract dispute.[2]  In North Carolina, "'[t]he elements of breach of contract are (1) the existence of a valid contract and (2) breach of the terms of the contract.'"  ***RD & J***

---

[1] The Court notes that Central does not appear to have exercised its option to renew its Rule 12(b)(2) motion or its motion to dismiss pursuant to the statute of frauds.  **See Memorandum and Order, *supra*, at 2-3 (dismissing these motions without prejudice to Defendants' ability to renew them at the close of discovery).**  Therefore, the Court will proceed to consider summary judgment on the merits.

[2] "[A] federal court sitting in diversity applies the conflict of laws provisions of the forum state, . . . if it does not violate due process to do so under the facts of the particular case."  ***Thornton v. Cessna Aircraft Co., 886 F.2d 85, 87 (1989) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).***  North Carolina has adopted the Uniform Commercial Code, which gives contracting parties the power to choose the applicable law.  **N.C. Gen. Stat. § 25-1-105(1).**

***Props. v. Lauralea-Dilton Enters.*, LLC, 165 N.C. App. 737, 742, 600 S.E.2d 492, 497 (2004) (quoting *Long v. Long*, 160 N.C. App. 664, 668, 588 S.E.2d 1, 4 (2003)).** In some instances, it is possible that "a valid contract may exist without the benefit of a writing." ***Rosby v. Gen. Baptist State Convention of N.C., Inc.*, 91 N.C. App. 77, 80, 370 S.E.2d 605, 608 (1988).** Here, the parties do not dispute the existence of the first element, namely a valid contract between Central and Plaintiffs – although that contract appears to have been principally oral in nature.

As to the second element, breach of the contract in question, Plaintiffs do not challenge the Magistrate Judge's recommendation that summary judgment be granted in favor of Defendants with respect to Plaintiffs' claims on commissions for the TMG Staffing account.[3] As the Court's independent review has revealed no apparent error in this conclusion, this discussion is limited to the propriety of summary judgment

---

[3] The Magistrate Judge's Memorandum and Recommendation states that Plaintiffs "claim that Central failed to pay commissions on the TMG account" must fail because "Plaintiff Stallings testified that as a precondition to entitlement to a commission on any business he may have brought to Central, he must have been the one to close on that account. Stallings Depo., at 120-21. It is undisputed, even by Plaintiff Stallings, that he never closed the TMG account. Id., at 124." **Second Memorandum and Recommendation, *supra*, at 9 n.3.**

in favor of Defendants with respect to Plaintiffs' claims on commissions for the Service Express account.

As to this account, the parties agree that Plaintiffs' right to receive commissions based on the oral contract terminated on July 31, 2004, when Service Express left Central and was no longer a viable account. ***See, e.g.*, Plaintiffs' Memorandum in Objection to Defendants' Motion for Summary Judgment, *supra*, at 10-11 (stating that Plaintiffs "were entitled to a commission, only so long as the account [Stallings] brokered was serviced"); Defendants' Supplemental Reply, *supra*, at 6-7 (stating that "Service Express had to remain a viable account with Central in order for [Plaintiffs] to be entitled to commissions").** As to the time prior to July 31, 2004, however, the only evidence in the record is Plaintiff Stallings' deposition, which contains the following colloquy:

> A.  Well the Service Express account I was receiving commission on at the agreed upon rate of 1-1/2 percent of payroll.  That account continued to be a Central account up until August of '04.  In January of '04 I was informed by Todd Hammond [of Central] that he wasn't going to continue paying any commission on that account anymore, so I did not receive any commissions on that account from January through July of '04 on Service Express.
>
> . . .
>
> Q.  All right.  So one of the – on the Service Express account the only deficiency you had was January '04 through July of '04?

A.  On the Service Express, yeah.  That's correct.

Q.  And how much was that?

A.  That – the commission – naturally it varied because it was based on a percent of payroll and of course payroll varies, but it was on average I would say running between 7,500 and 9,000 a month.

**Stallings Deposition,** *supra***, at 57-58.**  Defendants argue repeatedly that Central is entitled to summary judgment as to the Service Express account because Stallings himself admits in his deposition that he was not entitled to commission after July 2004.  ***See, e.g.***, **Defendants' Motion for Summary Judgment,** *supra***, at 11**.  This argument, however, neglects to address Stallings' testimony about the commissions Plaintiffs were owed for the period from January 2004 to July 2004.  Absent any argument as to why Plaintiffs are not entitled to the commissions for this period, the Court concludes that summary judgment in favor of Central is not appropriate as to this portion of Plaintiffs' breach of contract claim.

For the reasons stated above, the Court concludes that summary judgment is granted in favor of Defendants on all issues except for Plaintiffs' breach of contract claim against Defendant Central.  This claim survives summary judgment only insofar as it addresses the commissions Plaintiffs claim they accrued for the Service Express account between

January 2004 and July 2004.  Trial of this lone issue is scheduled for the

Court's December 3, 2007, term in the Bryson City Division.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiffs' motion to amend their

complaint is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary

judgment is hereby **GRANTED IN PART AND DENIED IN PART** as set

forth above.

Signed: October 23, 2007

Lacy H. Thornburg
United States District Judge